United States District Court
Southern District of Texas

**ENTERED**

April 29, 2021

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| CASEY WAY, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-19-334 |
| HELIX ENERGY SOLUTIONS GROUP, INC., | § § | |
| Defendant. | § § | |

**MEMORANDUM AND OPINION**

Casey Way, Juan Jose Rodriguez, and Bobby F. Ladd sued Helix Energy Solutions Group, Inc., alleging a failure to pay the overtime wages required under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. (Docket Entry No. 1).  The plaintiffs have moved for partial judgment on the pleadings and for partial summary judgment, denying Helix relief on the affirmative defenses it asserts.  (Docket Entry Nos. 39, 40).  Helix has responded, and the plaintiffs have replied.  (Docket Entry Nos. 42, 43, 46, 47).  Based on the motions, the responses, the record, and the applicable law, the court denies the motions.

The reasons are explained below.

I.    **Background**

A.    **Factual and Procedural Background**

Helix provides offshore-drilling construction, inspection, maintenance, repair, and salvage services to the oil and gas industry.  (Docket Entry No. 1 at ¶ 11).  Way began working for Helix as an electrician from January 2010 to 2013.  (*Id.* at ¶ 12).  Way transferred to an electro-technical officer position in 2013 and resigned in 2018.  (Docket Entry No. 40-1 at 53, 107–08).

In January 2019, Way filed this collective action against Helix under the Fair Labor Standards Act.  (Docket Entry No. 1).  Way alleges that Helix paid him a day-rate basis that did not include the overtime pay rate required by the Fair Labor Standards Act.  (Docket Entry No. 1 at ¶ 40).  Way alleges that he regularly worked over 40 hours per workweek but was paid the same day-rate for each workday, regardless of how many hours he worked.  (*Id.* at ¶¶ 24–28).

In May 2019, the court conditionally certified a class of "electro technical officers paid on a day rate."  (Docket Entry No. 43 at 1; Docket Entry No. 17).  Juan Jose Rodriguez and Bobby F. Ladd opted-in as plaintiffs.  (Docket Entry Nos. 18, 21, 22).  The plaintiffs moved for partial judgment on the pleadings and for partial summary judgment on the affirmative defenses Helix had asserted.  (Docket Entry Nos. 39, 40).  Helix has responded, and the plaintiffs have replied. (Docket Entry Nos. 42, 43, 46, 47).

### B.    The Summary Judgment Record

The summary judgment record consists of the following exhibits:

- the deposition of Casey Way, (Docket Entry Nos. 40-1, 43-4);

- the deposition of Henrik Pearson of Helix,[1] (Docket Entry No. 43-2);

- an informational pamphlet about Helix's Q4000 DP3 and Q5000 DP3 Well Intervention Vessels, (Docket Entry Nos. 40-3, 40-4);

- Helix's offer letters to Way and Rodriguez, (Docket Entry Nos. 40-5, 40-6);

- Helix's job description for an "Electro Technical Officer" position, (Docket Entry No. 40-2);

- Helix's responses to the plaintiffs' FLSA-protocol interrogatories, (Docket Entry No. 40-7);

- Helix's responses to the plaintiffs' first set of interrogatories, (Docket Entry Nos. 40-8, 40-9, 40-10);

---

[1]  The record does not identify Pearson's position at Helix.

- Helix's first amended responses to the plaintiffs' first set of interrogatories, (Docket Entry No. 43-5);

- sample engineering reports, (Docket Entry Nos. 40-11, 40-12);

- Helix's responses to the FLSA-protocol requests for production, (Docket Entry No. 40-13);

- Helix's responses to the plaintiffs' first requests for production, (Docket Entry Nos. 40-14, 40-15, 40-16),

- the declaration of Kenric McNeal, Helix's director of human resources, and accompanying exhibits, (Docket Entry No. 43-1);

- the declaration of Dan Loebel, captain of the Q5000 vessel, (Docket Entry No. 43-3); and

- Helix's Rule 26 disclosures, (Docket Entry No. 40-17).

## II.    The Legal Standards

### A.    Judgment on the Pleadings

"A motion brought pursuant to Federal Rule of Civil Procedure 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002). The Rule 12(c) standard is the same as that under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see also Elsensohn v. St. Tammany Parish*

*Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). The Supreme Court explained that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 677.

### B.    Summary Judgment

"Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018) (per curiam) (quotation marks omitted); Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if a reasonable jury could enter a verdict for the non-moving party." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 358 (5th Cir. 2020). The moving party "bears the initial responsibility of . . . demonstrat[ing] the absence of a genuine issue of material fact," *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019) (citation and quotation marks omitted), and "identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) (citation and quotation marks omitted). While the party moving for summary judgment must demonstrate the absence of a genuine and material factual dispute, it does not need to negate the elements of the nonmovant's case. *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017) (per curiam) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 n.16 (5th Cir. 1994) (per curiam)). "A fact is material if its resolution could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379 (5th Cir. 2020)

(citation and quotation marks omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (citation and quotation marks omitted).

When the moving party has met its burden, "the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010).  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).  "This burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."  *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation and quotation marks omitted).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018).

//

//

//

//

//

//

//

//

//

## III.     Analysis

### A.     The Motion for Partial Judgment on the Pleadings

In its answer, Helix asserts the following affirmative defense:

Any acts or omissions by Helix with respect to the payment of wages were undertaken in good faith reliance on the regulations and interpretations of the Wage Hour Administration of the United States Department of Labor and/or legal advice or opinions from outside counsel and were based on long-standing industry standards and practices.

(Docket Entry No. 10 at ¶ 6).  The plaintiffs argue that the court should dismiss this defense under Rule 12(c) because Helix has not pleaded sufficient facts under *Iqbal* and *Twombly*.  (Docket Entry Nos. 39, 46).

As an initial matter, whether or how *Iqbal* and *Twombly* apply to affirmative defenses is unclear.  The Fifth Circuit previously stated that affirmative defenses are subject to the same pleading requirements that apply to complaints.  *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  At that time, pleadings had to provide "fair notice."  *Id.*  The Supreme Court later clarified in *Iqbal* and *Twombly* that the pleading standard for complaints is higher than "fair notice," and that a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Since then, the Fifth Circuit "has not addressed whether *Twombly* and *Iqbal* effectively overruled *Woodfield*."  *Morgan. v. Goodman Mfg. Co., L.P.*, No. 4:19-CV-00850, 2021 WL 1169390, at *9 (S.D. Tex. Mar. 10, 2021), *report and recommendation adopted,* No. 4:19-CV-00850, 2021 WL 1166756 (S.D. Tex. Mar. 26, 2021). The Fifth Circuit has, however, "indicated [that] the fair notice standard is the appropriate pleading standard for affirmative defenses" in cases after *Twombly* and *Iqbal*.  *Patai v. Marquez Constr. & Maint.*, No. MO:19-CV-281-DC, 2021 WL 1432698, at *2 (W.D. Tex. Mar. 2, 2021).  This court has followed that guidance and required defendants' pleadings to provide "fair notice." *See, e.g., Morgan,* 2021 WL 1169390, at *9 (collecting cases); *Patai*, 2021 WL 1432698, at *2

(collecting cases). Helix's affirmative defenses must provide "enough specificity or factual particularity to give 'fair notice' of the defense that is being advanced." *T.R.M. v. GlaxoSmithKline LLC,* No. 4:14-CV-00452, 2015 WL 12551485, at *2 (S.D. Tex. Aug. 21, 2015) (quoting *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008)); *Woodfield*, 193 F.3d at 362.

The plaintiffs argue that, even under the fair-notice standard, Helix's good-faith defense must be dismissed. (Docket Entry No. 46). The plaintiffs rely on *Tran v. Thai*, No. CIV.A. H-08-3650, 2010 WL 723633 (S.D. Tex. Mar. 1, 2010). In that case, the defendants pleaded the following affirmative defenses:

> (1) Plaintiff's claims under the FLSA are barred, in whole or in part, pursuant to 29 U.S.C. § 259(a); (2) [t]he complaint is barred, in whole or in part, pursuant to 29 U.S.C. § 260, because Defendants acted in good faith with regard to some or all acts or omissions alleged in the complaint and had reasonable grounds for believing some or all such acts or omissions were not in violation of the FLSA.

*Id.* at *1 (quotation marks and citations omitted). The court concluded that the defendants did not sufficiently plead the good-faith defenses under 29 U.S.C. §§ 259(a) and 260, because the defendants "[knew] the bases for their affirmative defenses that they relied on a regulation, order, ruling, approval, or interpretation of the Wage and Hour Division and that they acted in good faith." *Id.* at *2. The court dismissed the defenses, without prejudice, and granted leave to replead.

Helix argues that *Tran* does not apply, because the defendants in that case cited only the statutory provisions and Helix has done more. (Docket Entry No. 57 at 4). Helix also relies on *Jordan v. Helix Energy Sols. Group, Inc.*, 346 F. Supp. 3d 890 (S.D. Tex. 2018). In *Jordan*, Helix pleaded an affirmative defense virtually identical to the one in this case:

> Any acts or omissions by Helix with respect to the payment of wages to its assistant drillers, drillers, and day-rate workers, like Plaintiff, were undertaken in good faith reliance on the regulations and interpretations of the Wage Hour Administration of the United States Department of labor and/or legal advice or opinions from outside counsel and were based on long-standing industry standards and practices.

*Id.* at 899.  The plaintiff asked the court to dismiss the defense under Rule 12(c) for lack of factual specificity.  *Id.* at 898.  The court denied dismissal, concluding that Helix's pleading "provided specificity" because it identified the "specific exemption[] in the FLSA" on which Helix later moved for summary judgment.  *Id.* at 900.

The plaintiffs have not identified a basis for distinguishing *Jordan*.  The court sees no reason why Helix's pleading should be sufficient under Rule 12(c) in *Jordan* and not here.  Helix's answer provided fair notice that it intended to rely on the good-faith defense it asserts.  The plaintiffs' motion for partial judgment on the pleadings is denied.

### B.    The Motion for Partial Summary Judgment

The plaintiffs argue that summary judgment is warranted on Helix's affirmative defenses because:  (1) the plaintiffs are not seamen, making them nonexempt from overtime requirements under the FLSA; (2) Helix abandoned the defenses based on the FLSA's administrative exemption and highly-compensated-employee exemption; and (3) Helix abandoned its good-faith defense and lacks summary judgment evidence supporting it.  The court addresses each in turn.

### 1.    The Seaman Exemption

The Fair Labor Standards Act requires that an employee who works more than 40 hours in a workweek be paid overtime wages unless he or she falls within an exemption, including the exemption for "any employee employed as a seaman."  29 U.S.C. § 213(b)(6).  The statute does not define "seaman."  The Fifth Circuit recently clarified that an employee is a seaman if: "(1) the employee is subject to the authority, direction, and control of the master; and (2) the employee's service is primarily offered to aid the vessel as a means of transportation, provided that the employee does not perform a substantial amount of different work."  *Adams v. All Coast, L.L.C.,*

988 F.3d 203, 207 (5th Cir. 2021) (quoting *Coffin v. Blessey Marine Servs., Inc.*, 771 F.3d 276, 281 (5th Cir. 2014)).

The plaintiffs argue that they are not seamen because their work primarily related to "servicing offshore oil and gas wells," not to aiding a vessel in transportation.[2] (Docket Entry No. 40 at 16). They argue that they are more like "employees on floating equipment . . . engaged in performing essentially industrial or excavation work." (*Id.* at 17 (quoting 29 C.F.R. § 783.34)). The plaintiffs argue that their deposition testimony and engineering reports support finding that they spent over 20% of their working time on nonseaman duties. (Docket Entry No. 40-1 at 75:22–25, 76:3–7, 78:13–79:2, 123:2–5, 123:22–124:4; Docket Entry Nos. 40-2, 40-11, 40-12). The reports identify work that the plaintiffs completed but do not show how much time the plaintiffs spent on the work.

Helix argues that the plaintiffs' work directly related to the transportation of a vessel because, as electro-technical officers, the plaintiffs worked on systems that kept the vessel afloat and allowed it to be safely navigated. (Docket Entry No. 43 at 6–8, 12–17). In his declaration, Dan Loebel, captain of Helix's Q5000 vessel, stated that electro-technical officers spend less than 20% of their time working on nonmarine equipment, meaning that over 80% of the plaintiffs' time was spent working on equipment necessary to keeping the vessel afloat and navigable. (Docket Entry No. 43-3 at ¶¶ 8–9). Loebel also reviewed the plaintiffs' engineering reports and stated that "a majority of the [plaintiffs'] duties appear to be related to maintenance of marine equipment." (*Id.* at ¶ 9.).

---

[2] The plaintiffs also argue that the seaman exemption cannot apply because Helix is not a transportation company and its vessels do not transport passengers or cargo. (Docket Entry No. 47 at 4). But a vessel need not transport cargo or people for its crew to be seamen. *See Adams*, 988 F.3d at 213 ("[A] helmsman does not cease to be a seaman because he transfers to a casino boat that spends most of its time moored." (quoting *Harkins v. Riverboat Servs.*, 385 F.3d 1099, 1104 (7th Cir. 2004)).

The court must consider whether the plaintiffs primarily performed duties that were "necessary to the operation" of the vessel. *Adams*, 988 F.3d at 213. The current record, with conflicting testimony and engineering reports that lack detailed time information, does not provide an answer. There are genuine factual disputes material to determining whether the plaintiffs spent such a substantial portion of their working time on nonseaman duties as to fall outside the "seaman" exemption. The plaintiffs' motion for partial summary judgment is denied as to Helix's affirmative defense based on the FLSA's seaman exemption.

### 2. The Administrative and Highly-Compensated-Employee Exemptions

An employee is exempted from the FLSA's overtime-wage requirement as a highly-compensated employee if the employer proves that: (1) "the employee earns total annual compensation of $100,000 or more, which includes at least $455 per week paid on a salary basis"; (2) "the employee's primary duty includes performing office or non-manual work"; and (3) "the employee customarily and regularly performs at least one of the exempt duties or responsibilities of an exempt executive, administrative or professional employee." *Lansford v. RedZone Coil Tubing, LLC*, No. MO:17-CV-0225-DC-RCG, 2019 WL 4999059, at *3 (W.D. Tex. July 11, 2019) (citing *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x. 349, 359 (5th Cir. 2015)).

An employee is exempted as an "administrative employee" if the employer proves that the employee: (1) earns "at least $455 per week"; (2) "exercise[s] discretion and independent judgment with respect to matters of significance"; and (3) "primarily perform[s] work directly related to the management or general business operations of the employer or the employer's customers." *Harris v. Liberty Oilfield Servs., LLC*, No. 16-CV-01116-CMA-STV, 2018 WL 447355, at *4 (D. Colo. Jan. 17, 2018) (citing 29 U.S.C. § 531.200(a)).

The plaintiffs argue that Helix has abandoned the defenses under those exemptions, based on Helix's interrogatory responses. (Docket Entry No. 40 at 18–19). In its responses to the plaintiffs' interrogatories about what FLSA exemptions it relied on, Helix identified only the seaman exemption and stated that it would "supplement [its] answer in accordance with the Court's deadlines and reasonably in advance of trial." (Docket Entry No. 40-8 at 7; Docket Entry No. 40-9 at 7; Docket Entry No. 40-10 at 7). In its first amended response to the plaintiffs' interrogatories, Helix identified the seaman exemption, the administrative exemption, and the highly-compensated-employee exemption. (Docket Entry No. 43-5 at 19).

The plaintiffs argue that Helix's amendment was too late because it came after the plaintiffs had moved for summary judgment. (Docket Entry No. 47 at 4–5). Helix served its amended response to the interrogatories on March 30, 2021. (Docket Entry No. 43-5 at 14). The plaintiffs had until March 12, 2021, to move for summary judgment. (Docket Entry No. 38). Although Helix's first amended response was served after that deadline had expired, the plaintiffs were on notice of the facts supporting Helix's assertion of the administrative and highly-compensated-employee exemptions. The plaintiffs' paystubs, which Helix produced, show that the plaintiffs earned over $100,000 annually. (Docket Entry No. 43-1 at 74, 94). Way testified that he earned over $100,000 per year and over $455 per week while working for Helix. (Docket Entry No. 43-4 at 105–06). Way also testified that he was not micromanaged and that his job responsibilities completing job-safety-analysis forms and making sure that Helix "had all [the] paperwork in order." (*Id.* at 26–27, 37).

The record shows genuine disputes of fact material to determining whether the plaintiffs qualify as administrative or highly-compensated employees under the FLSA. The plaintiffs'

motion for partial summary judgment is denied as to Helix's affirmative defense based on the FLSA's administrative and highly-compensated-employee exemptions.

### 3.    The Good-Faith Defense

The plaintiffs argue that they are entitled to summary judgment on Helix's good-faith defense because Helix lacks summary judgment evidence supporting it.[3]  (Docket Entry No. 40 at 21–23).  In response, Helix points to the declaration of Kenric McNeal, Helix's director of human resources, in which he states that Helix determines the exempt status of employees based on their "job duties and responsibilities."  (Docket Entry No. 43-1 at 4).  McNeal also states that electro-technical officers are "classified as exempt within the industry."  (*Id.*).  Although Helix produced that declaration after the plaintiffs' motion deadlines had passed, the court considers it because the plaintiffs were on notice of Helix's good-faith defense and were not surprised or prejudiced by Helix's delay.

The plaintiffs also argue that compliance with industry standards is insufficient to prove good faith.  (Docket Entry No. 47 at 5–6).  That is correct.  *See, e.g.*, *Tillis v. S. Floor Covering, Inc.*, No. 3:16-CV-287-HTW-LRA, 2018 WL 4571924, at *11 (S.D. Miss. Sept. 24, 2018) ("Blind adherence to industry practice is an insufficient basis" for good faith); *Reich v. S. New England Telecommunications Corp.*, 121 F.3d 58, 71 (2d Cir. 1997) ("Nor is good faith demonstrated by . . . simple conformity with industry-wide practice." (citation omitted)).  But Helix is not relying solely on industry practices to prove good faith, instead invoking it as a relevant consideration. *See Bennett v. SLT/TAG Inc.*, No. CIV. CV02-65-HU, 2003 WL 23531402, at *9 (D. Or. May 8,

---

[3]  The plaintiffs also argue that summary judgment is warranted because Helix did not adequately plead its good-faith defense.  (Docket Entry No. 40 at 21).  That argument is foreclosed by the court's denial of the plaintiffs' motion for partial judgment on the pleadings.

2003) (denying the plaintiff's motion for summary judgment on the defendant's good-faith defense based in part on the defendant's reliance on industry standards).

The record shows a genuine factual dispute material to determining whether Helix's alleged violations of the FLSA were in good faith.  The plaintiffs' motion for partial summary judgment is denied as to Helix's good-faith defense.

## IV.   Conclusion

The plaintiffs' motions for partial judgment on the pleadings and for partial summary judgment, (Docket Entry Nos. 39, 40), are denied.

SIGNED on April 29, 2021, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge